This video was recorded on October 1st, 2021, at 4 p.m. EDT on the ZTE Corporation website.  This video was recorded on October 1st, 2021, at 4 p.m. EDT on the ZTE Corporation website. First, the Board adopted a theory of motivation to combine that was found nowhere in the petition. Not in the ground on which it was instituted, the sole ground, or in fact anywhere. And that is inconsistent with the statutory scheme of the AIA, as put forth by the Supreme Court in decisions like SAS, and this Court's subsequent decisions in Acceleration Bay and others. Second, at a minimum, the Board denied IPRL's procedural protections by adopting this motivational theory on remand, incorporating a prior art reference, the draft UMTS standards, that were no part of the instituted proceedings. Those were used only for other things in other grounds that were not introduced. As you just stated the two points, what is the difference between them? They're very related, Your Honor, and here I think is the difference. The first one says that the Board must confine itself to the bounds of the petition. The second one allows for a little more flexibility if the argument is sufficiently raised in the petition, but the Board wants to rely on additional evidence. For example, in the Roll-Obama case, when the Board relied on the petitioner or the patent owner's own evidence against it, all that was required there was APA notice. What about the gen-sign? Is that the driver? Gen-sign, yes, Your Honor. So that one, the question was whether the Board had to recite the evidence in the institution decision that it was ultimately going to rely on in the final decision. So that one didn't involve a question about whether the particular evidence was relied on in the petition for the proposition eventually needed to be established under the relevant ground. Correct, correct. But they do say that the reference was there, it was there in another context, there was no surprise. Yes, thank you, Your Honor, and I think it helps to look exactly at what those references are to see why they were not intended to apply a motivation to combine in this context. For ground one. For ground one. And I think the best place to see that is where the petition in ground one sets forth its motivation to combine. And that's found at pages A312 to 314. And what you'll see there is it talks at length about combining the GPRS with Jawanda references. It also talks about combining Jawanda with the IEEE. It doesn't say word one about using the UMTS standards as this catalyst, this magic sauce, to provide the motion to combine. What it does also is it points to its discussion of the GPRS references, the documents, and the reason to combine those together. It again, though, doesn't mention the UMTS standards. If they wanted that to be part of ground one, that would have been the place, I submit, to do it. In addition, they also rely on several references to the BIMS declaration. Now our contention is the arguments need to be in the petition, and if they're not there, the BIMS declaration can't save it. But the BIMS declaration itself does not include this theory of motivation. And again, I would point the court to Dr. BIMS' own explanation of the motivation to combine. And this is at paragraphs 165 to 172 of his declaration. And it's found at A744 to 46. And that first paragraph is one that both ZTE and the board focus on a lot. It's paragraph 165. And it admittedly acknowledges that there are multiple prior art references across all three grounds. It lists them all as a kind of intro paragraph to its motivation to combine. And it says these are all sort of in the same field, and there could be some mixing and matching going on between them. But then it goes on to say exactly what mixing and matching it's talking about. And nowhere in there in the subsequent paragraphs, 166 to 172, does it ever provide this theory about using UMTS as the catalyst. What it does say at that final paragraph, 172, the only place it describes what UMTS is used for, it says it's used to be combined with IEEE. And that was another ground. So Dr. BIMS' own testimony, what he put forth as the motivation to combine, nowhere states this theory. And beyond that, Your Honor mentioned other references. There are additional background references in the petition to the UMTS standard. But that makes sense because it was one of the other grounds. So in setting up all of the grounds, the petitioner summarized the background evidence and prior art, but then ultimately did not rely on UMTS. It's not mentioned once in Ground 1, including in Ground 1's motivation to combine. Can I segue here to what you know is a big question here? Why doesn't Ground 2 and Ground 3 go back under SAS? Sure. So for a couple of reasons, Your Honor. First, ZTE didn't cross-appeal. So the ruling of the Board is? What authority do you have for the cross-appeal, A, requirement applying here, and B, even if it would ordinarily apply, not being subject to a change of law exception of the very sort that we have recognized in a dozen cases, not the cross-appeal context, with one exception, which we'll get to, one exception that I know of, you may know of others, that SAS was a big enough change of law that a whole bunch of normal, very strict procedural rules about preserving things came within an exception, including you've got to make the argument in the opening brief and so on. Now, the Supreme Court has said on cross-appeals that it has said repeatedly we're not going to decide if it's a jurisdictional rule, but it's really quite strong, but so is the rule that you need to make your arguments in the opening brief. I found only one case, a Ninth Circuit case, that said, well, the cross-appeal rule can actually be subject to a change of law exception. Why? And I'm eliding a threshold question of whether it even applies here, which we might get to, but why doesn't that apply here? And I guess just the final point, you probably are aware that last fall in the Wonderland case, this argument was presented to us about no cross-appeal, and we denied petition for rehearing on that ground. It's not precedential, but we did it. So I'll try to break down your Honor's question. You first asked if there's any authority for requiring cross-appeal here. I would point the Court to a recent decision, fairly recent. The statement in Hamilton Beach. Hamilton Beach, exactly. And so that suggests that it is jurisdictional. No, it doesn't suggest it's jurisdictional. It suggests it's a strong rule. It's a strong rule. And I think the case it relies on in there did suggest that it was jurisdictional. Right, but the Supreme Court has said a couple of times, maybe most recently in green law, we do not decide whether it's jurisdictional, only that it's very strong. I would say if it's jurisdictional, then it would not be subject to the change in law rule. If it is not jurisdictional, then I think it would. I think it would, but I think that doesn't matter here under the waiver doctrine that this Court has consistently applied post-SAS. So what this Court has said post-SAS is if you want to raise this, you can actually raise it on appeal. You didn't have to raise it before the Board precisely because of this change of law issue. But what you have to do is raise it promptly. And promptly in this Court's case law is somewhere between 9 and 30 days after SAS itself. I guess that argument left me scratching my head a little bit. I mean they raised it in the first filing where it would matter, namely their red brief. They certainly can make a conditional SAS argument. That is to say, we don't want it to go back if you're going to affirm the unpatenability of the single claim, Claim 8, on the ground that it's been found unpatentable on. That would be silly. So they make it in their very first place where it was going to become key, which is if we lose on Ground 1, then of course we want Ground 2 and Ground 3. Why is that too late? A couple of reasons, Your Honor. First, in the Baker-Hughes case, which we cited in our brief, this Court made a point of saying you didn't wait until the merits briefing. You filed a motion immediately. You sought to have it remanded and not put the Court and the parties through the inefficiency of briefing and say if that's what you want to do, then you should do it right away. And number two— But we didn't say that that was required, did we? We didn't say it was required, but in explaining why it was sufficiently prompt in that case, the Court made a point of saying that and I took that to have some weight. In addition, the Milan case, another recent case, we didn't cite it in our brief, but it's at 914 F. 3rd, 1377. This Court said that waiting over six months is too long. It's not prompt. And so here they waited seven months. And so I would submit if they wanted this to go back and do yet another redo of this, under this Court's case law requiring promptness, I think the time to do that was somewhere between, you know, one and a month or two days, you know, after the SAS itself. That's what I would say to that. Do you make anything of the fact that their time for filing a cross-appeal had not run at the time the Supreme Court decided? I think the Board here issued its ruling in early March. The Supreme Court decided, was it April 26th? April 24th, I think. April 24th, right. And their 63 days would not have run until May 7th or 8th or something like that. So they could actually have filed a cross-appeal during that time, but, you know, two weeks to figure all that out, if change of law as an exception really does apply, seems perhaps a little harsh. Right, and I think my answer would probably be similar under both circumstances. I didn't make a lot of that fact. I think if change of law is ultimately going to trump the rest, then whether it was before or after, it makes it matters from a jurisdictional point of view. But, again, putting aside, assuming that's not jurisdictional, then I think change of law could overcome in both of those circumstances. But it certainly cuts a little bit more against them, I would say. So what's the remedy that you're seeking? We are seeking a reversal, Your Honor. We think reversal is appropriate here because there's nothing in the petition, no theory of motivation that would get them over the hump. The motivation that this court found lacking last time was to implement a specific feature of GPRS, the PDP context, in the context of a completely different underlying protocol, the CDMA protocol. And nothing in the petition, as we were discussing earlier, sets forth that motivation, let alone sets forth UMTS as the kind of cornerstone of it. And I would point this court to the Irma Kim case. In that case, there was an APA violation. We cited it in our brief. We didn't discuss it extensively, but it is cited in the brief. And there was an APA violation, and the court said, we will reverse because the petitioner, the other party, didn't contest that reversal was the appropriate remedy. And I would submit here that ZTE hasn't contested that, putting aside the SAS issue, that if you find error, either procedural or substantive, on ground one, that reversal is the appropriate remedy. And so the court doesn't have to make a general pronouncement about reversal always being appropriate to find that reversal is appropriate in this case, as we think it is. Okay. Let's hear from the other side. Thank you. Mr. Jones. Good morning, Your Honor. Brian Jones on behalf of ZTE. May it please the court. The board's decisions on remand should be affirmed because it was supported by substantial evidence. IPRL's procedural rights were not violated because it had an opportunity and, in fact, did respond to ZTE's motivation to combine. Therefore, the court should affirm the board's decision on remand. So my recollection, just tell me if I'm wrong, that what happened when we remanded this the last time, there was a, I don't know, a telephonic conference call, pre-trial hearing or something, about how we're going to proceed. And the discussion began. You said, well, we would like to tell you a little something about why we think there is the evidence that this court's opinion said. We don't see the evidence for that, but the board should take a look. The other side said, well, if they're going to file something, then we're going to want to respond to it. And the members of the board panel said, we don't want prosy argument. We'd like lists, basically. And issued an order saying that the other side cannot respond without getting permission. And then you chose not to file anything, thereby depriving them of the ability to respond under the order. And that's generally correct, Your Honor. The board asked us to supply citations to where our arguments were in the brief. And due to an administrative error, we never got the notice to file that brief. And we did not file it for that reason. The reason that they weren't able to file their own citations is true, that we did not file our own response. But that was not necessary, because there was substantial evidence in the record for the board to come to its initial conclusion. But there was our remand saying that there was not sufficient evidence. It does seem like a high-handed board procedure. But whether it was something that a party put them up to, or they thought of it themselves, you can't enlarge the record, does seem strange. Part of what is intended for these board procedures is that they will provide a substitute for the trial court, fairness and so on. And it does seem, doesn't it seem to you, that when there is a remand for additional evidence, that there should be no opportunity to provide that? Well, and the point was that the board was very cautious of not expanding the record, and they did not want the parties to make arguments and wanted the parties to rely on what was in the briefs. And had we been able to file, or had we filed, we would have cited to the same evidence that the board cited. You were able to file. I mean, you had this long call, and that was the whole subject. I don't really get the, you know, we were waiting for an invitation delivered at the door. Well, there was an issue with where the notice was sent to, and it was sent to a prior email address at a prior firm, and we didn't get the notice. But, again, I don't believe that impacts the record, because the record would still be made up of evidence that was provided during the initial proceedings. So I think Mr. Bell's argument is not that there is no reference in the petition or supporting parts of the petition to the UMTS in particular, which is what the board on remand relies quite heavily on, but rather that that evidence was not asserted as part of a ground one theory, and even more particularly was not asserted as part of the motivation to combine aspect of the ground one theory, and that that's a real problem. And it was asserted in the petition on pages 26 and 27 of the petition. That's the background assertion? That's the background description? No, that's with respect to ground one, and claim one with respect to What's the JA site for? Appendix 312 and 313, Your Honor. And 313 of the appendix is where it sets forth the alternative motivation with respect to GPRS that would have been an obvious design choice to a person of ordinary skill in the art. I'm sorry, is UMTS referred to in the 312, 314 part? It refers to GPRS, because that same teaching of the PDP context. Isn't that what we had last time? As we said, the GPRS doesn't actually appear to do it? No, that was with respect to Jawanda's teaching that suggested Jawanda could be implemented using GPRS or CDMA, and this court found that it was not sufficient to rely on that teaching alone. And this motivation is the alternative to Jawanda, which said it would have been an obvious design choice to implement the PDP context of GPRS, and one of skill in the art would have known that the PDP context would have provided the benefits and features of maintaining a communication session when roaming between networks. And the reason that Dr. Bim's background testimony on this is important is that is what he describes when reviewing the scope and content of the prior art, that those who design prior art systems based on standards would have looked to these standards in order to understand the features. And he testified that one would have found the PDP context from GPRS to be beneficial. And I think the reason that you asked your first question about why these two issues are the same is that in order to win this appeal, IPRL has to suggest that the linchpin of the case is draft UMTS. And that's not the case, because the PDP context and GPRS were known to provide these benefits, and an ordinarily skilled artisan designing a cell phone would have looked to those standards, and that's what the board pointed to, and that's what was said in the petition. IPRL had an opportunity to respond, and in fact did respond to this very argument by suggesting that it was impossible. And that was the error that the court made, or the board made, in its first decision. It ran right to the dispute that the parties had about impossibility. And it filled its decision this time without skipping that initial step and said a designer designing a cell phone who's faced with the problem of switching networks would look to teachings in GPRS that provide maintaining a communication session, which is what the standard did. Draft UMTS further completes that analysis because someone actually did it in the prior art. You're discussing the merits as it was before the court on the first time around. And here we have a decision in which we said you haven't shown sufficiently motivation. Entirely what's before us now is primarily a matter of procedure. Is it not? The prior record has already been reviewed and disposed of. That's true, and the board affirmed that all of the claims except for Claim 8 were unpatentable. And this court remanded so that the board could consider its decision with respect to Claim 8. The problem with its decision in the first instance is that they jumped right to the dispute between the parties about whether it would have been obvious, sorry, the dispute between the parties as to whether it would be impossible to make the combination. And the decision on remand was meant to address whether it would have been obvious to first make that combination, not just whether it would have been impossible. That wasn't the basis of our remand. Our remand related to motivation to combine. It did relate to motivation to combine, and that's exactly what the board did on remand was identify the motivation to combine supported by and crediting the testimony of Dr. Bims. On the same record that we had previously rejected. On the same record, but not on the same evidence that the board articulated in its reasoning. The problem with the first decision is they articulated only the dispute between the parties, which was related to impossibility of the combination, and jumped right past the motivation to combine. They corrected that error on remand by relying on all of the evidence in Ground 1 of the petition, all of the evidence in the background that supported the motivation that it would have been obvious to a designer looking at cellular systems at the time to use the PDP context as articulated by GPRS and as confirmed in a CDMA system like Draft UMTS. The Draft UMTS is a compelling motivation, but it's not the only evidence that the board relies on for its decision. And so it's not necessary to decision in terms of motivation to combine to rely on just the Draft UMTS standards. It's the entire scope and content of the prior art, not just that one reference. And if I could address very quickly, SAS Institute, you are correct that this is an alternative argument, and we raised it in our brief for the very first time that was available to us. No, that's not true. It's not the first time that was available. You had seven months of available electronic email service to file a motion or something. That is correct. And this court has, however, never found waiver of an issue when there has been a substantial change in law during the pendency of the appeal. IPRL filed its appeal on April 11th, and SAS Institute came out after that. And all of the cases... I'm right, right, that you actually had two weeks after April 24th in which you could have actually filed a notice of cross-appeal. I haven't calculated the days, but there was... 63 plus following what March 3rd. Was it March 3rd was the... So, yes, there was a period of time in which we could have filed a cross-appeal, but this court has never found that time period would affect your cross-appeal rights. Sorry, your rights to make an alternative argument when there's been an intervening change in law during the pendency of the appeal. Do you know any case law on that? The only thing that I found was one passing reference in a published Ninth Circuit decision and then a more recent non-presidential Ninth Circuit decision. And basically, I couldn't find anything else about the interaction between change of law and a cross-appeal rule. I'm not aware of any other case, Your Honor. I will say that Mylan is instructive. Yeah, what happened in Mylan? In Mylan, the appellant waited until his reply argument to raise the possibility of a remand in that case. And in that case, the court found that... Was the opening brief post-April 24th, 2018? All of the briefing had concluded at that point. At what point? I'm sorry. At the time SAS Institute had come out, all of the briefing was already concluded. And rather than raising it even in their primary argument or filing a notice of supplemental authority, Mylan chose to wait until its reply argument at the Federal Circuit... Oh, the rebuttal oral argument. Correct. I'm sorry. Correct. And so, in that case, it was too long because there were opportunities for the appellant to file a notice of supplemental authority. Here, ZTE placed it in its opening brief at the first instance of this pending appeal, and SAS Institute had been decided during the pendency of the appeal. And I also think that fairness mandates that if reversal is warranted as to ground one, which we believe it is not warranted because there's more than substantial evidence that goes beyond draft UMTS, but fairness mandates that because IPRL has tied this draft UMTS standard to the linchpin of our case with respect to ground one, yet they want to ignore it with respect to grounds two and three. And that's just not appropriate in these circumstances. And am I remembering right that the explanation the board gave when denying institution on grounds two and three was simply that they were redundant? That's correct. There was a redundancy argument that was made by IPRL. Which if UMTS is a big deal, that seems not so redundant. And I realize it's not the same, it's not with Jacinta or whatever, the different other piece of prior art. It is a different document that describes the motivation to combine, and the key to the GPRS standards. Jowanda. I'm sorry? Go ahead. Yes, Jowanda is the other reference. The key to the GPRS standards, the UMTS standards, and other prior art available at the time, is that one of ordinary skill in the art would have known that there's a benefit to using the PDP context from GPRS to maintain a communication session. That's what Dr. Bims' testimony was all about in paragraphs 165 and 166. And that's what it was based on in those prior paragraphs, 154 through 164, when Dr. Bims was analyzing the scope and content of the prior art, and what it taught to one of ordinary skill who was designing a cellular phone at the time that needed to switch between networks would have recognized the benefit taught in these prior art references. And it goes beyond UMTS, and is found even in GPRS, which is indisputably part of the ground one, and even labeled as such in ground one. And the board says that they credited Dr. Bims' testimony that one of ordinary skill in the art would have been aware of the problem of mobile devices frequently switching between networks and of solutions to transparently maintain a communication session. That's what... The issue, the question that catches attention isn't necessarily that the board could not have dug back into the record for additional justification. It was that they didn't have an opportunity to respond to it, to rebut it. And that's simply not true, because IPRL understood their motivation and, in fact, replied, and the board rejected that. And I see my time has ended. We request affirmance of the board's decision on remand, unless there's further questions. Thank you. Mr. Bell. Thank you, Your Honor. Just a few brief points to follow up. I do agree with my colleague in one sense, that this case really is about fairness. It's about fairness and providing an opportunity to respond to what became the central point of the board's remand decision. I would disagree with my friend on that point. If you look at pages A, 19, and 20, as Your Honor mentioned earlier, the UMTS standards really were the key point in the entire thing. The thing that said, ah, this had already been done in a CDMA context, therefore we know it's desirable and it's doable and somebody would have done it and all those things. But we had no opportunity to respond to the UMTS standards. It wasn't in Ground 1, as I mentioned before, and I would like to correct one thing in the record. The appendix site that my friend provided, Appendix 313, UMTS is not mentioned there at all. That's in Ground 1, and it's talking about Jawanda alone or Jawanda plus GPRS. And as Your Honor mentioned, GPRS and Jawanda were both the part of the prior decision. And so the fact that GPRS has this PDP context doesn't get them there. And so pointing to that part of Ground 1 can't get them there because this court held that that's not enough to provide the motivation to pluck that out of that protocol and drop it into the CDMA protocol. And they're relying for that, that logical step, they're relying on the UMTS standards, which we had no opportunity to rebut. It wasn't mentioned in their reply. It wasn't mentioned at the oral hearing. It wasn't mentioned in the remand proceeding. And then suddenly, sua sponte, the board decides, aha, that's what's going to get us there and puts it in its final written decision. And we submit that that is completely inappropriate and not consistent with the APA and warrants reversal in this case for the reasons I mentioned. And the final note on the cross appeal, they could have sought an extension, I would note. Sorry, sought a... They could have sought an extension to file their cross appeal after the change in law. An extension of the 63 days from the board, you can get that? That's not rigid? Is that what you mean? I think they could have tried to do that. I don't know if they would have been successful or not. But putting that aside... They had even two weeks before that. Right. Right. So again, that's, at the end of the day, not dispositive. We think Milan is illustrative because it shows that they could have filed a notice of supplemental authority there. The court noted that they didn't do that. That would have been doing something outside the normal briefing and argument process. And it's notable that all the court's decisions that remanded in light of SAS, almost all... Sorry, a notice of supplemental authority before the briefing? Before the argument. No, no, in this case. No, no, no, no. Apologies, Your Honor. In Milan, after all the briefing, sure, but here... The point there is they didn't have to wait for the next normal step, which was there, the argument. And here, they didn't have to wait for the next normal step, which was the brief. And most of the cases where this court did... I guess I'm just trying to imagine, what might they have filed? They might have... They did not want to file, quite sensibly, something that says, please remand this under SAS without reaching the correctness of the board's already remand decision, and finding unpatentable claim eight. They quite rightly would have thought, if we get an affirmance of that, the grounds two and three are quite moot. So what is it that they should have filed before their red brief? I think based on this court's case, which we cited in the gray brief, a footnote and several... In those cases, the party did file a motion to send it back before the briefing was done. And that's why this court noted... Well, if that's what they wanted, right? But, I mean... Well, I think... And, you know, if I'm remembering right, in the first few weeks after SAS, there was quite a lot of confusion, and there were issues about whether it was an all or nothing thing, whether this court could decide the instituted ground appeal without going back. And that got sorted out over the course of a little bit of time. But that really has been sorted out. So I'm struggling a little bit with what they could have filed that we... If they had filed saying, we have a conditional SAS argument. And what would we have said? We would have said, well, say it in your red brief. Well, I would respectfully point the court to the decisions that came out where the court did not just say, do it in your red brief. In fact, they said the opposite. They decided it on the motion to remand. And you're right, they could...  but they wanted to have their cake and eat it too. Wait and go through a briefing. And then as a final way to salvage it, send it back if we lose on the other merits. But this court in Baker suggested that it would be better, more efficient. In that particular case. In that particular case. Right, in a couple of cases where the issues were actually quite intertwined, we sent it back, the whole thing, without reviewing the instituted ground decision where it seemed to make sense. But we've done the opposite quite a lot. Well, and I think if this court decides that it was sufficiently prompt, and I don't think it was, but if the court decides it was sufficiently prompt, then I think it will have to squarely consider the jurisdictional impact of whether a cross appeal was necessary. And our position is that it was. And so for that additional reason, that would preclude a remand. And so for all those reasons, we think reversal is appropriate. And I see I'm way out of time, unless the court has any other questions. Okay, thank you. Thank you. Thank you both. The case is taken under submission.